UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

FRANK PICONE,

      Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CR-85 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 6, 2017, Frank Picone ("Defendant") pled guilty to Count One of an indictment. Count One charges Defendant with receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 170 months of incarceration, 5 years of supervised release, a fine in the amount of $250,000.00, restitution in the amount of $10,000.00, forfeiture as set forth in the Plea Agreement and Forfeiture Order, payment of a $5,000.00 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015, and payment of a $100.00 special assessment.

## BACKGROUND

On February 16, 2017, the United States filed an indictment charging Defendant with one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Indictment, ECF No. 6. On November 6, 2017, Defendant pled guilty to Count One of the indictment, charging a violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Plea Agreement, ECF No. 25. Following his guilty plea, the Court entered an order of detention and ordered Defendant remanded into custody. ECF No. 26.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

1

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on September 5, 1963, in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 40, ECF No. 28. Defendant is one of three children born to the marital union of Francesco Picone and Madeline Covalery. *Id.* Both of Defendant's parents are deceased. *Id.* Defendant shared a close relationship with his parents before their death. *Id.* ¶ 41. Defendant was raised under modest economic circumstances and reported no history of abuse or

financial hardship. *Id.* Defendant shares a close relationship with his siblings, ages 64 and 60, both of whom are aware of the instant offense and remain supportive. *Id.* ¶ 42. Defendant has resided in New York State his entire life; he has lived in Brooklyn; Mineola, New York; and White Plains, New York. *Id.* ¶ 43. Since approximately 2003, he has lived at the address of record in Brooklyn. *Id.*

On November 3, 2017, Defendant married Manami Kuwamura in Brooklyn; they have been together since approximately 2014. *Id.* ¶ 44. She resides at the address of record, is employed as a director of new cosmetics for Nars Cosmetics, and is in good health. *Id.* Defendant reported that they share a close relationship and she is standing by him despite the instant offense. *Id.* In an interview with the U.S. Probation Department, Defendant's wife stated she and Defendant share a good marriage and she speaks with Defendant daily. PSR Addendum at 1, ECF No. 33. She stated the address of record in Brooklyn will always be Defendant's home. *Id.* Defendant and his wife do not have any children. PSR ¶ 44. Defendant's sister stated the instant offense has brought Defendant's wife and the rest of his family closer together, and Defendant's wife is very supportive and committed to her marriage. *Id.* ¶ 45.

Medical records indicate Defendant suffers from epilepsy/seizure disorder and asthma and takes medication. *Id.* ¶ 49. Defendant advised that in 1993, he was diagnosed with grand mal seizures and suffered his last seizure in approximately 2009. *Id.* ¶ 50. Defendant also advised he was diagnosed with mitral valve prolapse (improper closure of the valve between the heart's upper and lower left chambers) in his 30s, but does not presently have any issues from this condition. *Id.* ¶ 51. Defendant suffers from chronic kidney stones, for which he has received surgery to remove the stones, including on January 28, 2016, at Maimonides Medical Center in Brooklyn. *Id.* ¶ 52. Defendant injured his shoulder in a ski accident in 2009 and

received surgery for his injury on March 23, 2009, but does not feel any pain today from this accident. *Id.* ¶ 53.

Medical records indicate Defendant suffers from unspecified depressive disorder and anxiety disorder, for which he has been prescribed medication. *Id.* ¶ 56. Defendant advised that prior to his arrest, he has received mental health treatment "on and off" his entire adulthood. *Id.* ¶ 61. Per his bond conditions, Defendant was mandated to undergo a mental health evaluation and/or treatment specific to the charged offense. *Id.* ¶ 57. From January 2017 until his remand in November 2017, Defendant received medication management treatment from a psychiatrist. *Id.* From January 2017 until November 2017, Defendant received weekly group therapy at Queens Counseling for Change in Queens, New York, *id.* ¶ 58, and from April 2017 until November 2017, Defendant received weekly individual treatment in Brooklyn, *id.* ¶ 59. Defendant did not report any history of illicit substances and advised he occasionally consumed a glass of wine with dinner but was not a big drinker. *Id.* ¶ 62.

From 1981 until approximately 1986, Defendant was intermittently enrolled at Pace University in New York, New York, where he majored in computer science and management information systems, although he never received a diploma. *Id.* ¶ 63. From October 2016 to November 2017, Defendant worked for Amtex Systems as an information technology manager, working in both New York, New York and Jersey City, New Jersey. *Id.* ¶ 65. From March 2016 to October 2016, Defendant was unemployed and received unemployment benefits. *Id.* ¶ 66. From March 2015 to March 2016, Defendant worked for Bombardier as a technical training coordinator in Queens, New York. *Id.* ¶ 67. From 1998 to March 2015, Defendant worked for the Metropolitan Transportation Authority (MTA) as a director in New York, New York, although he advised he was fired from the MTA due to a time card issue. *Id.* ¶ 68. From 1996 to

4

1997, Defendant worked for Chase Bank as a programmer in New York, New York, and prior to 1996, Defendant reported working for a law firm (name unknown) in New York, New York, as well as Barnes & Noble in New York, New York. *Id.* ¶¶ 69-70. According to the PSR, Defendant has a total net worth of $1,643,117.00 and has no outstanding liabilities. *Id.* ¶ 72.

Defendant has no known prior convictions or arrests. *Id.* ¶¶ 33-38. The investigation into the instant offense was conducted by agents of the Federal Bureau of Investigation (FBI). An undercover FBI agent investigating internet distribution and possession of child pornography used a peer-to-peer file sharing application and located a computer that was sharing child pornography, and the agent downloaded approximately 13 files containing child pornography, including exploitative images of toddlers, bondage, and bestiality. *Id.* ¶ 4. For example, one of the files showed an adult male and a nude prepubescent girl—a known victim—approximately 9 years old, engaging in oral sex. *Id.* Another video depicted an adult male, nude from the waist down, putting a prepubescent 4-year old girl, also nude from the waist down, on his lap as his penis rubs against the girl's vagina. *Id.* Records obtained from Time Warner Cable showed the IP address associated with the computer sharing these files was associated with an address in Brooklyn and the account was listed in Defendant's name at the address of record. *Id.* ¶ 6.

Pursuant to a search warrant, law enforcement officials executed a search of the address of record on January 18, 2017. *Id.* ¶ 7. Defendant was present at the time of the search and after being advised he was not under arrest and could discontinue speaking with the agents at any time, Defendant confirmed he resided at the address of record and stated he stored over 1,000 files containing child pornography on one external hard drive. *Id.* ¶ 8. He advised that he used a torrent sharing program to download child pornography and had been viewing child pornography for at least 10 years. *Id.* Defendant admitted he downloaded, viewed, and masturbated to child

5

pornography daily, although he stated he has never touched a minor in a sexual or inappropriate manner. *Id.* Defendant used the search terms "rape," "bondage," "tied," and "pre-teen hard core" when he searched for child pornography. *Id.* Defendant indicated he turned off his sharing of his completed files, but was nonetheless aware that his non-completed files were being shared. *Id.*

Law enforcement agents recovered, among other items, an external hard drive, a preliminary review of which revealed numerous file names indicative of child pornography. *Id.* ¶ 9. A forensic analysis of Defendant's computer was conducted and revealed at least 600 images of child pornography, some of which consisted of child erotica.[1] *Id.* ¶ 10. Law enforcement agents attempted to conduct a forensic analysis of Defendant's hard drive, but during the analysis the hard drive crashed, and the agents were unable to recover any of the stored images or videos of child pornography. *Id.* Accordingly, the total number of images and videos Defendant possessed is unknown, but Defendant is responsible for at least 600 still images of child pornography. *Id.* The child pornography depicted female victims from approximately age 2 to 14. *Id.* A sampling of the files in Defendant's collection was forwarded to the National Center for Missing and Exploited Children, which identified seven known victims already known to law enforcement within Defendant's images and videos. *Id.* ¶ 14.

B.  **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to

---

[1] Child erotica is defined as images and videos of children that include the lascivious exhibition of the genitals or pubic area. PSR ¶ 10 n.2. According to the PSR, Defendant possessed images of children, some of whom were dressed up in costume, who were posing in a sexual manner. *Id.*

6

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

"Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). For at least 10 years, Defendant actively participated in such harm and debasement through his repeated consumption of child pornography. His offense is therefore serious and warrants significant punishment. The Court also finds there is a substantial need for deterrence, as Defendant's and others' possession of videos and images of abuse necessarily fuels and fosters the market for more abuse. *See, e.g., United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." (citation omitted)); *United States v. Johnson*, 221 F.3d 83, 98 (2d Cir. 2000) ("[D]issemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession." (citations omitted)); *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence of 120 months of imprisonment for receipt, distribution, and possession of child pornography where district court had observed that "contrary to [the defendant's] contention, his crimes are not 'victimless' because they 'creat[e] a market' for child pornography and thus harm children, 'scarr[ing] [them] for life'").

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), for which he faces a statutory minimum term of imprisonment of five years and a maximum term of imprisonment of twenty years. 18 U.S.C. § 2252(b)(1). Defendant also faces: a minimum term of supervised release of five years and a maximum term of life, 18 U.S.C. § 3583(k); not less than one nor more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine in the amount of $250,000.00, 18 U.S.C. § 3571(b)(3); restitution as set forth in paragraphs 12 through 16 of Defendant's Plea Agreement, 18 U.S.C. §§ 2259, 3663, and 3663A; a mandatory $5,000.00 special assessment, 18 U.S.C. § 3014; and a mandatory $100.00 special assessment, 18 U.S.C. § 3013. Under the Plea Agreement, Defendant also faces criminal forfeiture. Plea Agreement ¶¶ 6-11; Forfeiture Order, ECF No. 31. Defendant must also comply with sex offender registration pursuant to the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq*.

## D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

For Count One of the indictment, receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), the base offense level is 22.[2] USSG § 2G2.2(a)(2). Since the

---

2   Pursuant to USSG § 1B1.11(a), the 2016 version of the Guidelines—which is the Guidelines Manual in effect on the date of Defendant's sentencing—is used here.

material involved photographs of minors under the age of 12, two levels are added. *Id.* § 2G2.2(b)(2). Because Defendant knew his non-completed files were being distributed and shared with other users of the torrent file sharing program he used to download child pornography, an additional two levels are added. *Id.* § 2G2.2(b)(3)(F). Because Defendant possessed images depicting bestiality, sadism, and masochism, and because a number of the images depicted the sexual abuse and exploitation of a toddler, four more levels are added. *Id.* § 2G2.2(b)(4). Two more levels are added because Defendant used a computer to transmit child pornography. *Id.* § 2G2.2(b)(6). Since the offense involved the possession of at least 600 images of child pornography, the offense level is increased by five more levels. *Id.* § 2G2.2(b)(7)(D). With these adjustments, Defendant's adjusted offense level is 37.

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. *Id.* § 3E1.1(b).

Accordingly, Defendant's total offense level is 34. Given a total offense level of 34 and a criminal history category of I,[3] the Guidelines suggest a term of imprisonment of 151-188 months. USSG Ch. 5, Part A. All parties agree with this Guidelines calculation. Def. Sentencing Memo at 2, 14, ECF No. 35; Gov't Sentencing Memo at 3, ECF No. 36; PSR ¶¶ 32, 78. The Guidelines further recommend a term of supervised release of five years to life, USSG § 5D1.2(b)(2) & n.1; a fine in the amount of $35,000.00 to $350,000.00, *id.* § 5E1.2(c)(3); and

---

[3] Defendant's total criminal history score is zero, which results in a criminal history category of I. USSG Ch. 5, Part A.

payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest that Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As set forth in the Plea Agreement, restitution is mandatory pursuant to 18 U.S.C. § 2259 in the full amount of the victims' losses attributable to Defendant's activities. Plea Agreement ¶¶ 12-16. The Government has requested restitution in the amount of $10,000.00 payable to an identified victim, whose images were among those in Defendant's collection of child pornography. The victim's real name has not been provided to preserve the victim's confidentiality.

## CONCLUSION

A sentence of 170 months of incarceration, 5 years of supervised release, a fine in the amount of $250,000.00, restitution in the amount of $10,000.00 to the victim identified by the Government, forfeiture as set forth in the Plea Agreement and Forfeiture Order (ECF No. 31),

payment of a $5,000.00 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015, and payment of a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 28, and the Addendum to the Presentence Investigation Report, ECF No. 33, to the extent they are not inconsistent with this opinion, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 9, 2018
      Brooklyn, New York

11